# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL R. JAMES,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-00031-CG-N |
| | ) |
| **BALDWIN COUNTY BOARD OF EDUCATION,** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant Baldwin County Board of Education's motion to dismiss pro se Plaintiff Michael R. James's complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5). The assigned District Judge referred this motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* (Doc. 7); S.D. Ala. GenLR 72(b). James filed a response (Doc. 8), to which the Board filed a reply (Doc. 11). Upon consideration, the undersigned **RECOMMENDS** that the Board's motion to dismiss (Doc. 5) be **GRANTED**.

### I.   *Background*

Construing James's pleading liberally in light of his pro se status, the complaint raises the following grounds for relief: (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000e *et seq.*); (2) sexual harassment in violation of Title IX (codified at 20 U.S.C. § 1681 *et seq.*); (3) age discrimination in violation of the ADEA (codified at 29 U.S.C. §§ 621–634; and (4) 42

U.S.C. § 1983.[1] James alleges the following facts (*see* Doc. 1, PageID.2–5), which are presented in the light most favorable to him, *see Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

On June 23, 2021, Coach John Hardman of Fairhope Middle School contacted James to arrange an interview for a special education teacher position. James agreed and came in for an interview the same day. The first phase of the interview consisted of James discussing his credentials with Coach Hardman, Assistant Principal Tonya Harrelson, and Kandis Lightsey.[2] James explained his work history and experience to the panel, at one point mentioning that he was sixty years old. At the conclusion of the discussion with the panel, Assistant Principal Harrelson escorted James to the next phase of the interview with Principal Angie Hall. Assistant Principal Harrelson told James that he should be impressed at his selection to continue the interview with Principal Hall, as they had already interviewed twenty-five other candidates for the job.

---

[1] James also mentions missing "several days [of work] . . . in the last few years" due to various medical conditions in concluding that the Board discriminated against him on this basis. (*See* Doc. 1, PageID.5). To the extent this allegation serves as an attempt to invoke another ground for relief, James's complaint is insufficient. James fails to offer (1) any allegation that the Board was aware of his medical conditions before it made its hiring decision; and (2) any reference to a relevant cause of action for discrimination based on his potential disability. Further, James's conclusory statement must be disregarded in evaluating whether his complaint states a claim upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] James does not specify Lightsey's job title.

When James arrived at Principal Hall's office for the second phase of the interview, she mentioned that James must have really impressed the panel to be brought directly to her. Principal Hall then stated that she heard some of the conversation from the initial interview. James chronicled his experience to Principal Hall, again mentioning that he was sixty years old. Principal Hall then looked to Assistant Principal Harrelson and asked if she wanted to hire James for the special education teacher position. Assistant Principal Harrelson indicated her approval. Principal Hall then directly offered the position to James—without mentioning any contingency based on reference checks—which he accepted. Principal Hall then informed James that he would need to resign from his current position with Mobile County Public Schools by the next day so she could submit his name to the Baldwin County Board of Education for approval. Lightsey then rejoined James and gave him a tour of the school.

As James extended his hand to Principal Hall before leaving, she hugged him. James appeared startled by the encounter, prompting Principal Hall to apologize and explain that "she was just a hugger."[3]

After the interview ended, James resigned from his position with Mobile County Public Schools. Seven minutes after James submitted his resignation, Assistant Principal Harrelson called James to rescind the offer to serve as a special education teacher with Fairview Middle School due to a reference response. James

---

[3] The complaint does not clearly specify when this interaction occurred during the interview.

3

asked for additional explanation, but Assistant Principal Harrelson refused. The position was eventually filled by two of Principal Hall's sons: Josh and Phillip Hall.

James filed a charge with the EEOC. (*See* Doc. 1, PageID.7). However, the EEOC declined to pursue the matter, instead issuing James a right-to-sue letter on December 2, 2021. (Doc. 1, PageID.7). Fifty-four days later, James filed the present suit.

## II.  *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a " 'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.' " *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker*, 623 F.3d at 1379 (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

### III. *Analysis*

#### a. Title VII Claim

The Board argues that James's Title VII sexual harassment claim[4] fails to state a claim upon which relief may be granted. Citing the various means of pleading a viable employment discrimination claim, the Board insists that James "fails to allege or cite direct evidence of discrimination, disparate treatment based on meaningful circumstantial and/or comparative data, or other facts creating a 'convincing mosaic' of evidence that point to unlawful discrimination . . . ." (Doc. 5, PageID.54). James being hugged by Principal Hall, in the Board's view, is not actionable sexual harassment under Title VII. (Doc. 5, PageID.56). James insists that

---

[4] In his complaint, James alleges that Principal Hall sexually harassed him by hugging him after his interview. James does not allege or imply that the Board failed to hire him as a result of his sex or any other classification protected by Title VII or Title IX. Accordingly, the undersigned construes James's Title VII and IX claims as sexual harassment claims rather than more general claims of discrimination based on sex.
  To the extent James alleges the Board retaliated against him for his reaction to Principal Hall's alleged sexual harassment, James fails to allege any facts indicating he engaged in statutorily protected expression or that the Board knew of his reaction to Principal Hall's hug before declining to hire him. *Cf. Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) ("To establish a prima facie case of retaliation under Title VII, the plaintiff must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment action; and (3) that there is some causal relation between the two events." (internal citation and quotation marks omitted)).

"[h]ugging, without a doubt, can be construed/interpreted as a type of sexual harassment, which is easily defined by the EEOC as unwanted and/or an unwelcome sexual advance, or physical harassment of a sexual nature." (Doc. 8, PageID.65). "The person being hugged could see it as sexual and it could cause an intimidating, hostile, degrading or offensive environment for the person being hugged and trigger a violation of federal employment law." (Doc. 8, PageID.64).

To establish a prima facie case of sexual harassment under Title VII, James would need to demonstrate that (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of was "sufficiently severe or pervasive to alter the terms and conditions of employment"; and (5) there is a basis for holding the Board liable. *See Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1286 (11th Cir. 2018) (quoting *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010)).[5] At the pleading stage, James is only required to allege "enough facts to state a claim" of sexual harassment "that is plausible on its face." *Twombly*, 550 U.S. at 570; *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

James's complaint passes muster on the first two prongs. As a male, James belongs to a protected class under Title VII. *Oncale v. Sundowner Offshore Servs.,*

---

[5] The Eleventh Circuit has disclaimed use of the familiar *McDonnell-Douglas* framework in non-retaliation sexual harassment cases. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 511 (11th Cir. 2000) ("We are unwilling to read the *McDonnell Douglas–Burdine* framework into non-retaliation sexual harassment cases at this point. These types of cases have evolved quite separately from other Title VII cases, and applying a burden-shifting analysis to them would be a departure from precedent.").

6

*Inc.*, 523 U.S. 75, 78 (1998). James also alleges facts sufficient to show that the hug from Principal Hall was unwelcome, as evidenced by his startled reaction and her immediate apology. *See Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982) ("In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive.").

James falls short, however, in alleging facts to establish the third and fourth prongs for a sexual harassment claim.[6] The third prong requires James to plausibly allege that the harassment complained of was based on his sex. *See Wilcox*, 892 F.3d at 1286. More specifically, James must allege facts that prove "but for [his] sex, [he] would not have been subject to sexual harassment." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1305 (11th Cir. 2016) (citing *Henson*, 682 F.2d at 904). While James claims that he viewed the hug as sexual harassment, he does not allege any facts indicating that Principal Hall subjected him to a hug due to his sex. Without more, James cannot meet the third element of a sexual harassment claim. *See Henson*, 682 F.2d at 904 (noting that in cases "where the conduct complained of is

---

[6] The undersigned need not address whether James alleged a plausible basis for holding the Board liable (the fifth prong) because, in the absence of any factual allegations of direct liability, he must first establish an actionable hostile environment. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) ("An employer 'is subject to vicarious liability to a victimized employee *for an actionable hostile environment* created by a supervisor with immediate (or successively higher) authority over the employee.' " (emphasis added) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

equally offensive to male and female workers . . . sexual harassment would not be based upon sex . . . .").

To satisfy the fourth prong of a sexual harassment claim, James must allege facts showing that he suffered sexual harassment that was severe and pervasive enough to alter the terms and conditions of employment. *See Wilcox*, 892 F.3d at 1286. "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

> [T]he following four factors . . . should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.*

In an unpublished opinion addressing a situation similar to the one James experienced, the Eleventh Circuit explained that allegations of a "single incident of misconduct" that was "unaccompanied by sexual suggestiveness or aggression" does not create an objectively reasonable perception of severe and pervasive harassment. *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (per curiam) (unpublished). Here, James alleges only that Principal Hall hugged him and immediately apologized. Even viewing the facts in the light most favorable to James, the complaint does not contain any allegation that the hug was accompanied by sexual suggestiveness or aggression. While James may have subjectively believed

8

that he suffered sexual harassment, this single incident is insufficient to create an objectively reasonable perception of sexual harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' "). Because his factual allegations fall short of establishing the third and fourth prongs of a viable sexual harassment claim, James's Title VII claim is due to be dismissed.

### b. Title IX Claim

The Board's argument against James's Title IX claim of sexual harassment largely mirrors their argument against James's Title VII claim (*see* Doc. 5, PageID.53)—as does James's response in opposition to dismissal (*see* Doc. 8, PageID.64–65). Courts generally use the same framework to analyze Title VII and Title IX sexual harassment claims, *see Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 865 n.4 (8th Cir. 2011) (collecting cases), albeit with the latter statute's limitation to educational institutions, *see* 20 U.S.C. § 1681(a).[7] Like a Title VII claim for sexual harassment, James's Title IX claim must contain factual allegations

---

[7] Most Eleventh Circuit district courts—including this Court—have held that when Title VII provides a parallel remedy, a Title IX claim is precluded. *See, e.g., Morris v. Wallace Cmty. College-Selma*, 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001). *But see Nurradin v. Tuskegee Univ.*, No. 3:21-CV-00155-SRW, 2022 WL 808693, at *15 (M.D. Ala. Mar. 16, 2022)(holding that Title IX claim is not precluded by Title VII where the plaintiff is both an employee and a student of the federally funded educational institution). Neither the Eleventh Circuit nor the Supreme Court has addressed this issue. *See Sadeghian v. Univ. of S. Alabama*, No. CV 18-00009-JB-B, 2018 WL 7106981, at *6 (S.D. Ala. Dec. 4, 2018), *report and recommendation adopted*, No. CV 18-00009-JB-B, 2019 WL 289818 (S.D. Ala. Jan. 22, 2019). However, Defendant does not raise that argument here, so the Court need not address it.

showing that (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of was "sufficiently severe or pervasive to alter the terms and conditions of employment"; and (5) there is a basis for holding the Board liable. *Cf. Wilcox*, 892 F.3d at 1286 (quoting *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010)). James must also allege that the Board is "a Title IX funding recipient." *See Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007).[8]

James's Title IX sexual harassment claim fails for the same reasons as his Title VII claim. *See supra* Section III.a. Further, James does not allege that the Board is an educational program that receives Title IX funds. Accordingly, James's claim of sexual harassment in violation of Title IX is due to be dismissed.

### c. Age Discrimination Claim

The Board contends that James failed to plausibly allege that it discriminated against him due to his age. Specifically, the Board notes that James voluntarily mentioned his age in passing during both phases of the interview and none of the interviewers responded negatively. "To the contrary," the Board argues, James's

---

[8] The Eleventh Circuit set out this requirement in explaining the elements of an educational program's liability for student-on-student sexual harassment. *See Williams*, 477 F.3d at 1293. Neither the Eleventh Circuit nor the Supreme Court have set out the precise elements of a Title IX sexual harassment claim in the employment context. However, 20 U.S.C. § 1681(a)'s limitation to "any education program or activity receiving Federal financial assistance" makes clear that a plaintiff must allege that an educational facility is a recipient of federal funds to establish a plausible claim of Title IX liability.

10

allegations indicate that "the screening team enjoyed the interview and recommended him to the school principal for a second interview"—which James also claims went well. (Doc. 5, PageID.54–55) (citations omitted). The Board insists that these are the only facts alleged by James relating to his age, and that his later "attempts to link his medical history to his age discrimination claim is wholly conclusory and speculative . . . ." (Doc. 5, PageID.55). In his response, James repeats this conclusion and predicts that it "will be proven in the discovery process even though [he] is the one that brought up his age in the interview process." (Doc. 8, PageID.66). James also emphasizes that discrimination based on his age—among other things—is likely because "what other reason could there be for the job offer to be rescinded in such a short amount of time" after the Board's employees claimed there were no issues with his references. (Doc. 8, PageID.66).

The ADEA prohibits employers from refusing "to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). At the pleading stage, James does not need to establish a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). James is only required to allege "enough facts to state a claim" of age discrimination "that is plausible on its face." *Twombly*, 550 U.S. at 570; *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). James can do this by plausibly alleging either direct or circumstantial evidence of age discrimination. *Cf. Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (explaining means of proving

11

age discrimination to survive summary judgment). Nowhere in James's complaint does he allege any direct evidence of age discrimination by either a decisionmaker for the Board or its employees. "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age . . . constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). James does allege that he mentioned his age at several points during the interview, but he does not claim that the Board's employees made any express remarks indicating age discrimination. Without any allegations of direct evidence of age discrimination, James must rely on circumstantial evidence.

James's attempt to plausibly allege circumstantial evidence of age discrimination fares no better. For James to establish a claim of age discrimination based on circumstantial evidence, he must allege facts showing either (1) a prima facie case under *McDonnell-Douglas*, or (2) a "convincing mosaic" of age discrimination. *Sims*, 704 F.3d at 1333. The elements of a prima facie case of age discrimination under *McDonnell-Douglas* are "(1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

James's allegations satisfy the first two prongs of a *McDonnell-Douglas* age discrimination claim, as he asserts that he was sixty years old at the time he applied

for the position with the Board (*see* Doc. 1, PageID.2) and that he suffered an adverse employment action when the Board refused to hire him (*see* Doc. 1, PageID.3). James also satisfies the fourth prong by plausibly alleging that he was qualified for the special education position with Fairhope Middle School, as evidenced by his fifteen years of teaching experience and background in educating at-risk youth. (*See* Doc. 1, PageID.2). However, he fails to plausibly allege that a younger person was hired instead of him. While James does allege that Principal Hall's sons were hired to fill the special teacher job, he does not mention how old they were. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2005) (per curiam) (affirming dismissal of an ADEA claim where the plaintiff failed to identify a younger individual hired to replace him). Accordingly, James's ADEA claim fails under *McDonnell-Douglas*.

Aside from the *McDonnell-Douglas* framework, James's ADEA claim can survive a motion to dismiss if he establishes a "convincing mosaic" of age discrimination with plausible allegations of "(1) 'suspicious timing, ambiguous statements . . . . and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *See Lewis*, 934 F.3d at 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)).

James fails to plead a viable ADEA claim under this theory as well. While James's claim that Assistant Principal Harrelson called to rescind the job offer shortly after an allegedly positive interview is suspicious, the complaint contains no

13

other allegations linking this failure to hire to James's age. By James's own account, he mentioned his age twice during the interview and received no negative reaction from any employee of the Board. Further, the complaint fails to identify the age of Josh and Phillip Hall, eliminating another means to raise an inference of age discrimination. *Cf. Tsavaris v. Savannah L. Sch., LLC*, 847 F. App'x 634, 640 (11th Cir. 2021) (affirming dismissal of ADEA claim where, among other things, employee failed to identify relevant comparator). Even viewing these allegations in the light most favorable to James, he fails to plausibly allege any facts allowing for a reasonable inference of age discrimination. Accordingly, James's ADEA claim should be dismissed.

### d. § 1983 Claim

The Board argues James's § 1983 claim is due to be dismissed because it never "knew of or had any opportunity to act on [James's] application . . . ." (Doc. 5, PageID.57). Only the Board has authority to fire or hire employees, and the actions of a "subordinate, non-policymaking employee" cannot sustain a § 1983 action for illegal actions during a hiring process. (Doc. 5, PageID.58). James acknowledges that "[w]ith the job offer being rescinded the same day the job was offered . . . [his] name was never put before the Baldwin County Board of Education." (Doc. 8, PageID.65). However, James emphasizes that the Board has a pattern of "tyrannical actions" and demonstrated nepotism in hiring Principal Hall's sons for the special education teacher position. (Doc. 8, PageID.65–66).

14

To plead a viable § 1983 claim, James must allege facts showing "(1) that the act or omission deprived [him] of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996–97 (11th Cir. 1990). However, in targeting a local government entity like the Board, James "cannot rely upon the theory of *respondeat superior* . . . ." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)). In other words, the Board "does not incur § 1983 liability for injuries caused solely by its employees." *Id.* The Eleventh Circuit explained that a local government entity can be held liable for an "employment decision, such as a termination, provided that the decisionmaker 'possesses *final authority* to establish *municipal policy* with respect to the action ordered.' " *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)).

James's allegations fall short of § 1983's requirements. As for the first element of a § 1983 claim, James does not specify which federal law or constitutional provision the Board violated. James cites several federal laws—Title VII, Title IX, and the ADEA—at the beginning of his complaint, but he does not identify which statute forms the basis for his § 1983 complaint. Further, James fails to plausibly allege that a decisionmaker for the Board took any action in failing to hire him. James's allegations focus on the actions of Principal Hall and other employees of the Board—none of which he alleges have the final decision-making authority of the Board to hire

15

employees. James concedes as much in his response, admitting that given the short period of time between his interview and Assistant Principal Harrelson's call informing him that he did not get the job, his "name/resume was never put before" the Board. (Doc. 8, PageID.65). Without any allegations rising beyond a *respondeat superior* theory of liability for the Board, James cannot maintain a § 1983 claim against it. *See McDowell*, 392 F.3d at 1289. Accordingly, James's § 1983 claim should be dismissed.

### IV.   *Conclusion*

Because James failed to allege facts demonstrating plausible claims under Title VII, Title IX, the ADEA, and § 1983, the undersigned **RECOMMENDS** that the Board's motion to dismiss under Rule 12(b)(6) (Doc. 5) be **GRANTED**. However, "[w]hen it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam) (unpublished) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice*."), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to counseled parties)). Here, the undersigned **RECOMMENDS** that James be given an opportunity to amend his complaint to cure the deficiencies noted above.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 18th day of May 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
